IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HELEN TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:10-CV-33-WKW [WO] |
| | ) | |
| CDA INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant CDA Incorporated's ("CDA") Motion for Summary Judgment (Doc. # 39), which has been fully briefed and is ready for adjudication. (Docs. # 40, 41, 43, 44.) Plaintiff Helen Terry ("Terry") alleges that her employer, CDA, required her to take unpaid leave because she was pregnant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k). Viewing the evidence and all reasonable inferences from that evidence in the light most favorable to Ms. Terry, the court finds that the motion is due to be denied.

### I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction). The parties do not contest personal jurisdiction or venue, and there are adequate allegations sufficient to support both.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation and internal quotation marks omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.").  On summary judgment, the evidence and the inferences from that evidence must be viewed in the light most favorable to the non-movant.  *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).  Hence, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'"  *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

## III.  FACTS

Condensed to their materiality and viewed in the light most favorable to Ms. Terry, the facts are few and simple.  CDA had a contract with the United States Army to supply security guards at Fort Rucker, Alabama.  Ms. Terry was employed by CDA as one of its security guards.  (Pl.'s Dep. 7 (Ex. B to Doc. # 39).)  Ms. Terry became pregnant during her employment.  On June 9, 2008, almost seven months into her pregnancy, Ms. Terry had a meeting with Ron Head ("Head"), CDA's project manager and chief of guards.  (Pl.'s Dep. 13.)  Mr. Head got straight to the point:  "[T]he question I need to know is if you are

pregnant or not." (Tr. of June 9, 2008 Meeting 2 (Ex. A to Doc. # 39)[1].) He continued that, if the answer is "yes," "you'll have to be on medical leave until you're relieved by a doctor." (Tr. of June 9, 2008 Meeting 2.) Ms. Terry responded, "Well, yes I am," to which Mr. Head replied, "Ok, well then you can't work . . . ." (Tr. of June 9, 2008 Meeting 2.) "You have a medical condition that prevents you from working." (Tr. of June 9, 2008 Meeting 2.) Later during the meeting, he reiterated in clear terms, "The condition, you know, the condition of being pregnant itself determines that you can't work here." (Tr. of June 9, 2008 Meeting 5.) On that date, Mr. Head required Ms. Terry to take unpaid leave for the remaining duration of her pregnancy. (Pl.'s Aff. ¶ 5 (Ex. 2 to Doc. # 44).)

On August 12, 2008, Ms. Terry gave birth to her child. (Pl.'s Dep. 41.) After receiving a medical clearance from her physician, Ms. Terry returned to work with CDA on November 3, 2008. (Pl.'s Dep. 41, 44.)

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Ms. Terry timely commenced this lawsuit. The governing Amended Complaint contains one count, alleging that Ms. Terry was "suspend[ed] from work without pay" because of her pregnancy. (Am. Compl. ¶ 31 (Doc. # 25).) Ms. Terry requests compensatory damages, punitive damages, nominal damages, injunctive relief, and back pay. (Am. Compl.)

---

[1] The meeting was surreptitiously recorded by Ms. Terry, and the recording was transcribed.

## IV.  DISCUSSION

Ms. Terry contends that CDA intentionally discriminated against her based upon her pregnancy, in violation of the PDA and Title VII.  Title VII provides that an employer may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  The PDA incorporates "because of . . . pregnancy, childbirth, or related medical conditions" into § 2000e-2(a)(1)'s definition of "because of sex."  42 U.S.C. § 2000e(k).

A Title VII plaintiff may avoid summary judgment (1) by presenting direct evidence or (2) by presenting circumstantial evidence of discrimination, using the burden shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[2]  Ms. Terry argues that she can prove her pregnancy discrimination claim with both direct and circumstantial evidence.  (Pl.'s Summ. J. Resp. 6-21 (Doc. # 43).)

This is a direct evidence case.  Direct evidence of discrimination is "'evidence that, if believed, proves the existence of a fact without inference or presumption.'"  *Dixon v. Hallmark Cos., Inc.*, 627 F.3d 849, 854 (11th Cir. 2010) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004)); *see also Bass*, 256 F.3d at 1111 ("'[D]irect evidence' refers to a type of evidence which, if true, would require no inferential leap in

---

[2]  "'[I]n cases of discrimination proven by direct evidence, it is incorrect to rely on the *McDonnell Douglas* test because, while circumstantial evidence is used to create an inference of discrimination under *McDonnell Douglas*, no such inference is required in the case of direct evidence.'"  *Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1104 (11th Cir. 2001), *overruled in part on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008) (quoting *Taylor v. Runyon*, 175 F.3d 861, 867 n.2 (11th Cir. 1999)).

order for a court to find discrimination."). "'[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory . . . attitude correlating to the discrimination . . . complained of by the employee.'" *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998) (quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990)). The evidence must show "that the complained-of employment decision *was motivated* by the decisionmaker's [sexism]." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358-59 (11th Cir. 1999). Thus, "'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [pregnancy]' will constitute direct evidence of discrimination." *Dixon*, 627 F.3d at 854 (quoting *Wilson*, 376 F.3d at 1086). "One example of direct evidence would be a management memorandum saying, 'Fire Earley-he is too old.'" *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

If ever there was a prototypical example of direct evidence, it is in this case. On June 9, 2008, Mr. Head demanded that Ms. Terry cease working for CDA as a security guard and required her to take unpaid leave for the remaining duration of her pregnancy. The reason given for his employment decision *was* Ms. Terry's pregnancy. As bluntly stated by Mr. Head, "The condition, you know, the condition of being pregnant itself determines that you can't work here." (Tr. of June 9, 2008 Meeting 5.) Mr. Head's statement does not require any leap of logic or inference by a jury to conclude that Ms. Terry's pregnancy motivated the decision to require Ms. Terry to take unpaid leave. The statement is subject only to one interpretation: Ms. Terry had to take unpaid leave *because* she was pregnant. Viewed in the

5

light most favorable to Ms. Terry, Mr. Head's statement raises a genuine issue of material fact as to whether pregnancy discrimination motivated the decision to place Ms. Terry on unpaid leave.

CDA does not dispute that Mr. Head made the above statement during the June 9, 2008 meeting. In fact, in its summary judgment brief, CDA forecasts that Ms. Terry "may argue that there is direct evidence of discriminatory intent because Chief Head told her at the June 9, 2008 meeting, that because she was pregnant[,] she could not work as [a] security guard . . . ." (Def.'s Summ. J. Br. 25.) CDA nonetheless contends that summary judgment is appropriate because "[t]he employment decision would have been the same," even absent consideration of Ms. Terry's pregnancy. (Def.'s Summ. J. Br. 25.) This is so, according to CDA, because at the June 9, 2008 meeting, Ms. Terry also requested that Mr. Head accommodate her pregnancy by placing her in a light duty position, but there were no such positions available for any security guard at CDA. (Def.'s Summ. J. Br. 25; *see also* Tr. of June 9, 2008 Meeting 5.) Relying in part on *Spivey v. Beverly Enterprises, Inc.*, 196 F.3d 1309 (11th Cir. 1999), CDA contends that, under the PDA, it was not required to accommodate a pregnant employee by giving her modified duties because modified duties

were not offered to non-pregnant employees who experienced temporary disabilities.[3] (*See* Def.'s Summ. J. Br. 23-24); *see also Spivey*, 196 F.3d at 1313 ("The PDA does not require that employers give preferential treatment to pregnant employees.").

CDA's sole argument in rebuttal to the alleged direct evidence rests on the "same decision" affirmative defense. "[O]nce a plaintiff shows that . . . sex discrimination was a motivating or substantial factor in an employment decision, the burden of persuasion shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have made the 'same decision' in the absence of the discriminatory motive." *Mora v. Jackson Mem. Found., Inc.*, 597 F.3d 1201, 1203 (11th Cir. 2010) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)); *see also Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1279 (11th Cir. 2008) (discussing the same decision defense). An employer cannot succeed on this defense, however, "'by offering a legitimate and sufficient reason for its

---

[3] CDA also points out that the transcript of the June 9, 2008 meeting between Mr. Head and Ms. Terry reveals that, during that meeting, Mr. Head informed Ms. Terry that he had received a call from the contracting officer that "someone had reported to the [Army's] Provost Marshal" that Ms. Terry was pregnant and that the Provost Marshal prohibited her from working if she was pregnant. (Tr. of June 9, 2008 Meeting 2-4.) Mr. Head also conveyed his belief to Ms. Terry that the Provost Marshal's 2006 memorandum concerning fitness standards for CDA security guards constituted a change in policy that banned pregnant employees from holding security guard positions at Fort Rucker. (Tr. of June 9, 2008 Meeting 2-5; *see* Oct. 2006 Mem. (Ex. B to Doc. # 16).) Ms. Terry strenuously objects to any defense by CDA that "'the Army made me do it'" (Pl.'s Summ. J. Resp. 15-18). In its "direct evidence" discussion, CDA does not attempt to shift the blame to the Army. Instead, CDA argues that, even if Mr. Head "misinterpreted [the Provost Marshal's] memorandum to mean that any degree of pregnancy was disqualifying or . . . felt obligated to put Ms. Terry on [unpaid leave] because of the earlier call" from the contracting officer, those facts "make[ ] no difference," given the unavailability of light duty positions. (Def.'s Summ. J. Br. 25.) Accordingly, Ms. Terry's argument need not be addressed at this time.

decision if that [reason] did not motivate it at the time of the decision.'"[4]  *Burwell v. Bd. of Trustees Ga. Military Coll.*, 125 F.3d 1390, 1395 (11th Cir. 1997) (quoting *Price Waterhouse*, 490 U.S. at 252).

CDA bears the burden of proof to establish the "same decision" defense; thus, to prevail on summary judgment, CDA must demonstrate that "on all essential elements" of this defense, "no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citation and internal quotation marks omitted). The evidence is not so one-sided that no reasonable jury could find for Ms. Terry on her pregnancy discrimination claim.  Whatever merit CDA's "same decision" evidence may have, the weight to be given it when placed on the scale opposite Ms. Terry's competing evidence is for the jury to decide, not the court on summary judgment.  A genuine issue of material fact regarding Mr. Head's motivation in placing Ms. Terry on unpaid leave during her pregnancy, therefore, remains for determination at trial.[5]  *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("Where the non-movant presents direct evidence

---

[4] The "same decision" affirmative defense is no longer a complete defense to liability.  Rather, in Title VII sex discrimination cases, a successful demonstration of this defense limits a plaintiff's remedies, but it does not absolve the employer of liability.  *See* 42 U.S.C. § 2000e-2(m); *see also Pennington v. City of Huntsville*, 261 F.3d 1262, 1269 (11th Cir. 2001) (observing that the Civil Rights Act of 1991 overruled in part the holding in *Price Waterhouse* by "reinstating limited damages for discrimination based on "'race, color, religion, sex and national origin . . . , even though other factors also motivated the practice.'" (quoting § 2000e-2(m)).

[5] It should be noted that CDA has not served an answer to the Amended Complaint within the time permitted under the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 12(a)(1)(A)(i), or filed a motion requesting an extension of time to serve its answer based upon "excusable neglect," *see* Fed. R. Civ. P. 6(b)(1)(B).  Hence, CDA has not raised any affirmative defenses to the allegations in the Amended Complaint.  The parties have not addressed what effect, if any, CDA's failure to serve an answer to the Amended Complaint has on its present assertion of a "same decision" affirmative defense. The court, therefore, also will not address this issue.

that, if believed by the jury, would be sufficient to win at trial, summary judgment is not appropriate even where the movant presents conflicting evidence."). Accordingly, CDA is not entitled to summary judgment.[6]

## V. CONCLUSION

For the foregoing reasons, the court finds that there are genuine issues of material fact that preclude the entry of summary judgment on Ms. Terry's PDA claim. Accordingly, it is ORDERED that CDA's Motion for Summary Judgment (Doc. # 39) is DENIED.

DONE this 10th day of May, 2011.

                                            /s/ W. Keith Watkins
                                      UNITED STATES DISTRICT JUDGE

---

[6] Because Ms. Terry has submitted direct evidence of discrimination, it is unnecessary to reach the parties' arguments made under the *McDonnell Douglas* framework. *See Copley v. Bax Global, Inc.*, 80 F. Supp. 2d 1342, 1348 (S.D. Fla. 2000) ("[A] finding that direct evidence of discrimination exists is, standing alone, normally sufficient to defeat a motion for summary judgment.").